M. Ray Huff, Asset Management Or I guess it's Huff v. Harmonay et al. Are you talking about these people? I know. What is it?   There's nothing we can do.      I want an EMV on a patent. Thank you. Very good. That's what my son and mother received when? Before my time begins to run, I noticed that on the list, there are two docket numbers. The second one refers to a second appeal which has not yet been briefed. Right. We were going to consolidate it thinking it wasn't in need of briefing.  and it just had to do with the clarification. I don't even know if there's this particular docket transformative or does it have the new docket form? Do we have jurisdiction over that issue? It's been consolidated. It's been consolidated. We may deconsolidate it if it needs to be. The question you're raising is whether or not considering the second appeal and the motion to dismiss, I can accomplish all of that in 20 minutes. I don't think we should. I think probably we'll end up deconsolidating it because it has not been briefed and it will be for another panel at another time. When it came in, I thought it was part and parcel of this. Do you know if it will be opposed? We're trying to dismiss it. There is a motion to dismiss it. It certainly will be opposed. There's been a brief filed in opposition and I'm prepared to argue that. I think we'll talk about it among the panel but don't address it today. Don't argue that. To some extent, I have to because it's intimately related to the error that we're appealing in the first case. Well, you do what you will. Mr. Gibbons, but I think we're not going to decide the merits of that. The other point I want to raise before my time starts is the old lectern had a crank so that tired eyes could bring their notes closer. I hope you won't take offense if I lift up my notes occasionally. This is, of course, in Section 1292 Appeal from the Denial of a Preliminary Injunction. Do you want rebuttal time, Mr. Gibbons? Rebuttal time? Yes, I did reserve three minutes. Okay, thank you. Now, the plaintiff appellant's Huff Asset Management is in the business of asset management for corporations and institutional investors. One of its principal products, a part of its business, is the acquisition from certain banks of various debtors' obligations and the packaging of those obligations into an aggregation with various risk exposures, various interest rates, and various maturities. Those aggregations are commonly referred to as CLCs, collateral loan CLOs, rather. Now, the district court here entered an order saying, give back everything you took, give back software, everything that is no longer, or everything that you took from Huff, and there are statements and affidavits to the effect that that's happened, so that these individuals no longer have any of the, what the court called, proprietary information. There's no non-compete in this case. These people are out doing what they've been doing over the years, being involved in securities. What is it that the court should have done by way of preliminary injunction, because we're not even talking about trial yet, that it didn't do? Well, Your Honor, it seems to me your question suggests the same error that the district judge made. We're dealing here with thieves. Oh, Miss... Well, what... Well, that's a... But I'm asking you... The exact description of their conduct. So what should... But I'm asking you the question. What should the district court have done that it didn't do? Should it have put them in jail? No, it shouldn't... It shouldn't have put them in jail, but since they engaged in clearly criminal conduct, someone may yet... But your complaint doesn't say put them in jail, you're their thieves. Your complaint says they're using stuff that they got from us and they're not supposed to use it. And the court said, okay, give it back, you gave it back,  I'm still asking that. No, what do they have to use now? What do they have in their possession to use? What they have is what they know. They know the confidential information that they agreed by contract not to use outside health's business. What do they remember? One of what they remember is confidential or trade secrets and one of that is stale. How do we make these determinations? You make the determination as you would in any case dealing with thieves who conspired in violation of at least two federal criminal statutes. But the district court has to enter an order and you want us to say that he was wrong because he didn't enter an order that says give them a lobotomy? Is that what you want? That says that they cannot compete with Huffman. Pendente lite. There is no non-compete. There is no agreement preventing them from competing. But your honor, think of what you're suggesting. The absence of a non-compete means they are free to violate the express terms of their confidentiality agreement. Well, if you could tell me exactly what you believe is covered by the confidentiality agreement that the court could put into an order. It's very broad. It talks about not disclosing anything, even public information, and the results of any analysis. Does that mean that if when they were at Huff, there was a report about lumber companies and they happened to know that of the nine lumber companies, which ones are the top four in terms of the best rate of return on a stock investment, let's say, that they somehow have to put that out of their minds? They have to kind of... They say, oh, wait a minute, I learned that at Huff. Okay, I can't do that. Yes. Well, how do we know? I mean, how... How do you do that? How do you do that? How do we... First of all, you want us to enter the injunction. You don't want it to go back to the district court. Your briefs, both of them, say you want us to enter a preliminary injunction, correct? That's pendente life. Or actually, in your case, pending the resolution of the appeal. We don't do that. Beyond that, of course, you would have to direct the district judge. Well, we don't. Yeah, but we don't enter preliminary injunctions. And if we did, what do you want us to enjoy? Because we don't know what they remember. Well, Your Honor, what you're suggesting is that these thieves get the benefit of the doubt about what they remember. We want an order pendente life that they not engage in the business of collateral loan. Well, you can't do that because they go out tomorrow and they do their own research and they figure something out. You know, in about 30 days, probably what they remembered before about past research is probably stale anyway. That brings up the other appeal. And so why then are they, did they ask the district judge to relieve them of the obligation that they agreed to not to solicit other Huff employees? They know that those Huff employees know Huff's strategy. They know how Huff put together these CLOs. Well, let me say this. I don't think I, for one, am not going to tell the district court it has to enter an order requiring no competition. That's too broad. But if you could tell me exactly what you want the district court to say in its order, that would accomplish the problem. I mean, that would accomplish the protection under the confidentiality agreement. That would be a help. Are you looking for an injunction that says something to the effect of you may not use the confidential information? Well, that would be certainly better than what we got. We got nothing. All the district judge entered in his order was what these thieves consented to. He didn't give us a single protection. And indeed, he, as you know from the papers on the second appeal, he even relieved them of an obligation that they had voluntarily undertaken. He treated this case as if these people were somehow innocent when in fact they're thieves. They have violated New Jersey criminal statutes. They violated federal criminal statutes. And they are engaged in an ongoing conspiracy to take confidential information that Huff has spent millions of dollars assembling. Well, counsel, now, you've heard the word stale a couple of times. I know this is about one of the issues here is what is a trade secret? And does this constitute a trade secret? But you have to admit, I know this area is dynamic. These deal with the markets. They left in October. This is the end of March. It's been over five months. Doesn't time dull the sharpness of your argument over time? Your Honor, these assemblages of CLOs involve a long spread of time. They involve putting together obligations that are sold to institutional investors that have short-range obligations, long-range obligations, high-risk obligations, short-range... But the stakes would change depending on market conditions, right? No? Well, the risk is what the products are put together to handle. And that information is confidential. For instance, counsel, I read one of the things. One of the elements is who's likely to declare bankruptcy within a year? Obviously, even if it was fresh at that point, we're five months into a year. Does that give the cart blank to use the information that their employer put together? What about the information Harmony and Connors learned in the years before they signed a confidentiality agreement? That's not protected at all, is it? That can be used now. We're not seeking protection of what he learned years before. That's it. We don't know what's confidential and what's not confidential and what's trade secret and what's not trade secret. And I suppose you're saying they have to know that something's confidential or trade secret and then it is inevitable that it will be disclosed or something like that. It is. Yes. And that's New Jersey case law. The inevitable disclosure doctrine. Of what? The inevitable disclosure of the information in the confidentiality agreement that they acknowledged. Their acknowledgement is evidence. Do we have to spell out on a public record what our confidential information is? When they have already acknowledged that they have confidential information? They have returned everything. There's nothing in the record. They haven't returned anything. I assume the technician has finished his messing around and the hard drives or computers are clean. That having been said, we're talking about whatever it is in their memories. Yes. But what is in their memories that they cannot use? Because I'm sure there's a lot in their memories they cannot use they can use assuming there's anything in their memories. We don't know. It sounds like a dumb question but it makes sense to me. What you're suggesting is dealing with acknowledged thieves who engaged in criminal conduct for the purpose of utilizing confidential information the risk of whether or not they're going to continue with their conspiracy should be on the victim rather than on the criminal. You're the one who's seeking the injunction. You have the burden of proving your case. They don't have the burden of proving a non-case. Judge Barry the evidence in our case is overwhelming. They admitted there was a theft. They admitted there was a theft. They admit now that they want to solicit other employees who have the same information in their head and you're saying well unless you lay out on the public record exactly what your strategy is and what the confidential information is you can't get any relief. Let me ask you if you would be satisfied with an order and I'm tracking the confidentiality agreement here that says that they shall not use any and all written and oral information analyses and conclusions that came into their possession while they were in the employ of W.R. Huff. Your Honor that would be certainly a lot better than what we have. But we are really entitled to an injunction preventing them from engaging in the two types of businesses. Why? On what basis? Because What's the legal claim of what's the claim of right from your standpoint? First the district judge himself in his opinion acknowledged that there was a prima facie case of violation of the confidentiality agreement acknowledged that the confidentiality agreement alone authorized injunctive relief but then didn't discuss it again. But he ordered return. No it hidden in the injunction that we're dealing with ordered return that would have been ordered in the order itself. But He said he didn't need to do any more than had already been done. Well as a matter of fact he did nothing except what they consented to. No relief. Let me ask you a Is the issue of whether there's a trade secret in the first place a question of fact? Not in this case because his definition of trade secret is simply wrong as a matter of law. He says trade secrets only exist in manufacturing or processing and that's just not the law. The securities firms around the world or all sorts of other firms that deal in intellectual property would be astounded to hear that they can't have trade secrets because they don't manufacture something. Of course there are trade secrets. But was there evidence offered specifically as to which trade secrets were sought to be protected? Well the the there was evidence offered about the existence of one-pagers and flexors dealing with specific products and they're the products we want protected. Alright I see your red light is on. We'll hear from you on rebuttal. Mr. Gibbons thank you. Good morning Your Honor. It's John Agnello on behalf of the defendants. If you would pull the mic over closer to you after having pushed it away thank you. Thank you. Judge the district court ordered all of the documents all of the information that we downloaded returned that was accomplished as the court noted. In addition he made a factual finding as the existence or nonexistence of trademarks going to Judge Shigaris' question and that is a factual finding and of course this court isn't to disturb those findings unless there's clear error. Why shouldn't they enjoy the possession of these gentlemen when they were at Huff and that they say they will not use it for any purpose other than Huff and now they may be out there using it. Why shouldn't they be enjoined? I think there's a couple of reasons for that. One of which Judge Barry alluded to directly. For instance, Mr. Harmony had worked for 11 years before the confidentiality agreement was put into place. Therefore in addition to his educational experience   experience    Harmony had worked  11 years before the confidentiality agreement was put into place. And Mr. Harmony had worked for 11 years before the confidentiality agreement was put into place.    for that is that Mr. Harmony had worked 11 years before the confidentiality agreement was put into place. And   addition   experience he had worked 11 years before the confidentiality agreement was put into place. And therefore in addition to his educational experience he had worked 11  before the confidentiality agreement   therefore   to his educational experience into place. And therefore to his educational had worked 11 years      into place. And therefore confidentiality agreement was put  place. And therefore to  experience he  worked 11 years before his educational experience he worked 11